UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 06-181-DLB

DANIEL C. GREER                                                                                          PLAINTIFF

vs.                              MEMORANDUM OPINION & ORDER

UNITED STATES OF AMERICA                                                              DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I.   INTRODUCTION

Plaintiff, Daniel Greer, brings this tax action alleging various claims relating to the recovery of federal income tax and interest allegedly assessed or collected erroneously or illegally. This matter is presently before the Court upon Defendant's Motion to Dismiss (Doc. #11) pursuant Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiff has filed a Response in Opposition (Doc. # 16) to which Defendant filed a subsequent Reply (Doc. # 17). Therefore, the motion is now ripe for the Court's review.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

During 1982, Plaintiff purchased a limited partnership interest in Madison Recycling Associates ("Madison") for $ 50,000.00. For tax year 1982, the Madison partnership was subject to the provisions of the Tax Equity and Financial Security Act of 1982 ("TEFRA"). Therefore, the treatment of partnership items was accomplished on the partnership level. *See Madison Recycling Assocs. v. Comm'r*, 295 F.3d 280, 281 (2nd Cir. 2002). During the following year, 1983, Plaintiff and his wife amended their 1979, 1980, and 1981 jointly filed

individual income tax returns to carry back excess investment tax credit and excess energy credits resulting from the pass-through of these credits from Madison as reported on their 1982 individual income tax returns.

In April of 1984, the Internal Revenue Service ("IRS") commenced an audit of Madison for tax years 1982 and 1983. Subsequently, on December 24, 1987, the IRS issued a notice of Final Partnership Administrative Adjustment ("FPAA") to Madison's tax matters Partner ("TMP") Richard Roberts. The FPAA resulted in the disallowance of energy and investment tax credits which Plaintiff claimed on his joint 1982 income tax return and carried back to his 1979, 1980, and 1981 returns. Ultimately, the IRS determined that Plaintiff's investment lacked economic substance.[1]

Accordingly, in February of 1988, the IRS initiated collection of taxes and interest based upon the disallowance of the partnership credits and deductions. On May 17, 1988, the Madison partners, including Plaintiff Greer, filed a Petition for Readjustment of Partnership Items in the United States Tax Court (the "TERFA partnership case") contesting the IRS's disallowance of the energy and investment tax credits, and claiming that the FPAA was not issued within the period of limitations for assessing any income tax attributable to any partnership item or affected item for Madison's 1982 taxable year.

The parties in the TEFRA partnership case, including Plaintiff, eventually reached an agreement that the adjustments made in the FPAA were correct, but litigated whether the FPAA was timely. Plaintiff and the other Madison partners moved for summary

---

[1] "By August 1984, the Internal Revenue Service began suspecting that various recycling partnerships, including [Madison], were abusive tax shelters." *See, Klein v. United States*, 86 F. Supp. 2d 690, 691 (E.D. Mich. 1999).

judgment, contending that the statutory period within which the IRS was required to issue an FPAA to the TMP of Madison had expired. The Tax Court concluded that the extensions of the statutory period were valid and denied the motion for summary judgment. *See Madison Recycling Associates v. Commissioner*, T.C. Memo 1992-605, 1992 WL 277821 (U.S. Tax Ct., October 13, 1992). The partners of Madison, including Greer, appealed the Tax Court's decision. On July 9, 2002, the Second Circuit affirmed the ruling of the Tax Court ("Second Circuit case"). *See Madison Recycling Associates, et al. v. Commissioner*, 295 F.3d 280 (2d Cir. 2002).

In late December of 1992, Plaintiff filed amended income tax returns for the tax years 1979-1982, excluding the energy and partnership investment tax credits originally claimed. Plaintiff paid the IRS $189,769, the amount computed to be due on the original returns, including interest. Concurrently, Plaintiff filed refund claims with the IRS for the $189,769, which Plaintiff designated as payment of taxes, and subsequently filed claim for refund of the same amount in what was termed a "protective claim" by Plaintiff. Thereafter, on August 19, 1993, Plaintiff filed a refund action in the U.S. District Court for the Eastern District of Kentucky ("1993 District Court action") seeking a tax refund of $189,769 from the United States for tax years 1979-1982, basing jurisdiction on, *inter alios*, 28 U.S.C. § 1346(a)(1).

In January of 1994, Plaintiff filed a motion for summary judgment alleging the United States "had knowledge that Richard Roberts, the tax matters partner of Madison Recycling Associates, had no authority to bind the other partners of the business, including Greer." Plaintiff also alleged the statute of limitations for the IRS to issue the FPPA had expired. The United States filed a Motion to Dismiss alleging the Court lacked jurisdiction over the

-3-

refund suit pursuant to 26 U.S.C. § 7422(h).  On September 21, 1994, the Court dismissed the case without prejudice to permit the issues raised in the suit to be resolved by a then pending case in the United States Tax Court (later appealed to the Second Circuit).[2]  The Court also ordered the government to return the $189,769, which the Court considered "a tax deficiency paid by the plaintiff as a prerequisite to the filing of [the] action."  Plaintiff moved to set aside the Order and the United States moved to alter or amend the verdict.  However, on January 25, 1995, the Court overruled both motions and the 1993 District Court action remained "pending" (subject to re-filing) until the resolution of the tax cases.

Following the Second Circuit's affirmation of the Tax Court's decision in the TERFA partnership case in 2002, *Madison Recycling Assocs. v. Comm'r*, 295 F.3d 280 (2nd Cir. 2002),[3] the IRS assessed against Plaintiff the tax and interest liabilities for the tax years 1979-1982 in accordance with the original FPAA issued in 1987 (hereinafter "computational adjustments").  On September 29, 2003, the IRS subsequently issued deficiency notices to Plaintiff for the computational adjustments totaling $698,252.43, which represented the original $189,769 paid by and returned to Plaintiff during the 1993 District Court action, plus the substantial interest thereon.[4]

---

[2] Judge Wilhoit's Order stated that the complaint was dismissed "without prejudice, subject to plaintiff's right to re-file pending the outcome of related tax court litigation."

[3] The parties had previously agreed during the Tax Court case that the adjustments made by the IRS in the FPAA were correct and the only issue litigated in the Tax Court case, and subsequently appealed to the Second Circuit, was the timeliness of the FPAA.  Because the Second Circuit affirmed the Tax Court's finding that the extensions of the statutory period were valid and denied Plaintiff's summary judgment motion on that issue, the IRS proceeded with assessing the partnership tax liability.

[4] In October of 2005, the United States recorded a Notice of Federal Tax Lien ("NTFL") with the Fayette County (Ky.) Clerk in regard to the assessed tax and interest determined in the 2003 computational adjustments.  While the NTFL is an issue before this Court, Plaintiff has confirmed

On August 11, 2006, thirteen years after the commencement of the 1993 District Court action and nearly three years after the issuance of the new computational adjustments in 2003, Plaintiff filed a motion for leave to amend his complaint in the 1993 District Court, which was technically still "pending" subject to re-filing. In response to Plaintiff's motion to amend and effectively re-file, the Court ordered that: "the Complaint in this case was filed on August 19, 1993 and relates to an investment made by Plaintiff in 1982. Given the time that has passed, the Court is not persuaded that beginning this litigation anew would serve the interest of justice." The prayer for relief in the proposed amended complaint in the 1993 District Court action is substantially identical to the to the prayer for relief in Complaint filed in the instant action on September 15, 2006.

### III.   ANALYSIS

In the last twenty years, this case has been litigated in numerous courts with issues ranging from tax credits and partnership adjustments to refund actions and tax penalties. Plaintiff characterizes the instant action, in an attempt to distinguish it from the earlier 1993 District Court action, as follows:

> Plaintiff is not seeking to re-litigate matters that were raised in his 1993 District Court case. Plaintiff's claims in the current action assert substantially different allegations from the 1993 District Court case. These claims are essentially two-fold: 1) that the assessments of tax and related interest asserted in the notices of computational adjustment issued by the [IRS] on September 29, 2003, are substantially overstated, for which relief my be granted under 26 U.S.C. § 6230; and 2) that the Notice of Federal Tax Lien filed by the IRS in October 2005 similarly overstated Plaintiff's tax liability, for which relief may be granted under 26 U.S.C. § 7433.

---

that he is not challenging, in the instant action, the penalties assessed by the IRS relating to the tax liability in question because said issue is pending before the United States Tax Court.

Accordingly, the matters before this Court are limited to the computational adjustments issued by the IRS in 2003, specifically any offset thereof, and the NTFL filed by the Government in 2005.

### A.   Standard of Review

Defendant filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *See Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A motion to dismiss under Rule 12(b)(6) for failure to state a claim for which relief may be granted requires the Court to construe the complaint in the light most favorable to Plaintiff, accepting as true all the Complaint's factual allegations and determining whether Plaintiff can prove no set of facts in support of the claims that would entitle relief.  *See Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990).

### B.   Computational Adjustments – § 6230(c)

Plaintiff reiterates at numerous junctures that, within the instant action, Plaintiff is not challenging the actual TERFA partnership adjustments adjudicated by the Tax Court and Second Circuit, nor is he challenging the penalties assessed against him by the IRS. Instead, Plaintiff questions the failure of the IRS to offset the 2003 computational adjustments with the taxes paid (and "refunded") in conjunction with the 1993 District Court action, as well as the initial $50,000 investment loss from 1982.  Defendant asserts that this Court lacks subject matter jurisdiction to hear Plaintiff's claim.

Although the United States generally enjoys blanket sovereign immunity, both parties acknowledge that 28 U.S.C. § 1346(a)(1) constitutes a waiver of sovereign immunity

by the United States with respect to taxpayer refund suits. Section 1346(a)(1) states in pertinent part:

> [T]he district court shall have original jurisdiction, . . . of (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

While this waiver appears broad on its face, the circuits have traditionally interpreted the wavier narrowly and the Supreme Court has held that "despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions." *United States v. Dalm*, 494 U.S. 596, 601, (USTC 1990).

One such statutory provision that qualifies a taxpayer's right to bring a refund action is 26 U.S.C. § 7422(h), which states "No action may be brought for a refund attributable to partnership items, except as provided for in section 6228(b) or section 6230(c)." Plaintiff readily acknowledges that § 7422(h) applies because the computational adjustments are partnership-related. Consequently, Plaintiff brings his claim under 26 U.S.C. § 6230(c), which is the only applicable exception to § 7422(h) that *may* provide Plaintiff a right of action in this matter. Both parties concede that § 6228(b) is inapposite.[5]

---

[5] Section 6230(c) reads in pertinent part:

Claims arising out of erroneous computations, etc.
  (1) In general. A partner may file a claim for refund on the grounds that - -
    (A) the Secretary erroneously computed any computational adjustment necessary - -
      (i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or
      (ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section

Accordingly, because Plaintiff brings this action pursuant to § 6230(c), the crux of Defendant's motion to dismiss with respect to Plaintiff's "refund" claim is that this Court lacks subject matter jurisdiction under § 6230(c) because: (1) Plaintiff challenges the accuracy of the 2003 computational adjustments without filing a claim for a refund, which includes submitting payment of the assessed tax liability; and (2) Plaintiff failed to file a claim based on the computational adjustments within six months of their issuance by the IRS, which is required by § 6230(c)(2)(A).[6]

In response to the prepayment issue, Plaintiff concedes that "there is not a prepayment forum that exists in which to contest the accuracy of the calculation of the computational adjustments." In other words, Plaintiff acknowledges that "refund" actions require prepayment because the entire purpose of such an action is to request a refund from the IRS. However, Plaintiff contends that he "is not contesting the fact that computational adjustments exist, only the fact that the computational adjustment did not take into account the amount of money Plaintiff has already paid, which was $189,769."[7]

---

      6226 or section 6228(a),
      (B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or
      (C) the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. § 6230(c) (2007).

[6] Defendant also challenges the general applicability of § 6230(c) in this case because of the contention that the events in this case do not fall under one of the three possible exceptions for a permissible refund action in partnership cases found in § 6230(c)(1)(A)-(C). The Court does not reach this argument because jurisdiction is lacking at a more elemental level as set forth *infra*.

[7] Notably, as discussed *supra*, Plaintiff was "refunded" this money by Court Order in the 1993 District Court Action, as the initial payment of the taxes was effectively a jurisdictional "deposit" to allow for the filing of a refund action by Plaintiff. Nevertheless, Plaintiff now asserts that

According to Plaintiff, the accuracy of the adjustments is no longer in controversy because of past decisions of various courts, but instead Plaintiff maintains that he is merely challenging the failure to offset the entire tax liability owed by the prior deposit (and refund) in connection with the 1993 District Court action and the initial $ 50,000 investment loss from 1982. Plaintiff asserts that prepayment is not necessary to invoke this Court's jurisdiction or, alternatively, that Plaintiff has already submitted the required payment in connection with the 1993 District Court action.

Ultimately, however, the issue of whether an offset of the computational adjustments would constitute a challenge to the "accuracy" of the assessment, or something else as Plaintiff suggests, is not reached by this Court because jurisdiction is lacking on the statute of limitations ground as set forth by Defendant. In other words, even assuming arguendo that the action is proper without prepayment, the Court is nevertheless without subject matter jurisdiction to hear Plaintiff's § 6230 claim, because if it falls outside the statutory requirements under § 6230(c), then it fails to meet the narrow sovereign immunity waiver promulgated in § 1346 by way of § 7422(h) in partnership-related actions.

To invoke this Court's jurisdiction for a refund action related to computational adjustments in the partnership context, Plaintiff is required pursuant to 26 U.S.C. § 6230(c)(2)(A) to bring said action "within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." Plaintiff acknowledges that he seeks to "recover payments made which the IRS failed to consider in the computational

---

the total tax liability in the computational adjustments should be offset by the amount paid even though it was returned. Although the merits of this argument are not reached fully, the contention that money returned to Plaintiff should no longer be owed when there was never a ruling in favor of Plaintiff is unpersuasive.

adjustments made in September 2003...." Accordingly, Plaintiff must have filed the instant action by March of 2004 to fall within the limitations period. Plaintiff, however, did not bring the current action, nor attempt to amend his complaint in the 1993 District Court action until nearly three years after the IRS issued the computational adjustments.

Plaintiff states in conclusory fashion that he has "paid the tax due, did seek a refund, and that these acts were made within six months of the computational adjustments" and that those "acts are the prerequisites for maintaining an action under 26 U.S.C. § 6230." Despite Plaintiff's conclusory and seemingly unfounded statements that jurisdiction exists, not only has Plaintiff failed to remit the amount of tax in controversy, Plaintiff has also failed to file during the six-month period following the issuance of the computational adjustments by the IRS.[8] In fact, as Defendant points out, the only action taken by Plaintiff directly with the IRS in relation to the underlying tax liability – which originated in 1982 with Plaintiff's tax return filing and in 1987 with the FPAA issued by the IRS – occurred in 1992 when Plaintiff commenced the 1993 District Court action by filing a claim refund claim with, and submitting payment to, the IRS.

Essentially, Plaintiff now attempts to bootstrap the instant action within the statute of limitations by relating it back to the 1993 District Court action. However, even though Plaintiff *may* have satisfied jurisdictional prerequisites for the original 1993 District Court action,[9] that was a refund action pertaining to the FPAA issued by the IRS 1987, which

---

[8] Plaintiff's filing also falls outside the two-year limitations periods found under § 6230(c)(2)(B), which neither party argues should apply in this case.

[9] The District Court ruled that: "although the Court does not concede to the absence of subject matter jurisdiction..., it feels it appropriate to dismiss this action without prejudice, subject to the Plaintiff's right to refile pending the outcome of the related tax court litigation."

spawned the action in Tax Court and occurred long before the final adjudication of that TEFRA partnership case by the Second Circuit in 2002. The 1993 District Court action was dismissed in 1994 because of the Tax Court case that was contemporaneously pending to the District Court case. The District Court dismissed the action without prejudice and ordered the "refund" of the taxes paid by Plaintiff, which was effectively a jurisdictional "deposit" to bring the refund action. The Court's Order allowed for the refiling of the case following the final disposition of the Tax Court case and subsequent Second Circuit case.

However, when Plaintiff attempted to amend his complaint thirteen years after the commencement of the 1993 District Court action, the Court did not allow the amendment on grounds that justice would not be served, despite the final adjudication of the TEFRA partnership case and the new issue of computational adjustments by the IRS in 2003. Plaintiff now brings to this Court claims effectively identical to those with which Plaintiff attempted to amend the 1993 District Court action in 2006.[10] Therefore, the subject of the instant action, as Plaintiff concedes, is the computational adjustments issued in 2003 following the conclusion of the TEFRA partnership case.[11] Accordingly, because Plaintiff

---

[10] Notably, even Plaintiff's attempt to amend his complaint in the 1993 District Court action came three years after the issuance of the 2003 computational adjustments, which is well outside the six-month limitation period under § 6230(c)(2)(A) (and even outside the two-year period for § 6230(c)(2)(B)).

[11] Plaintiff states in his Complaint before this Court that: "The amounts of the tax due set forth in the September 29, 2003 notice of computational adjustment and the October 11, 2005 Notice of Federal Tax Lien have not been adjudicated by the United States Tax Court nor any United States District Court." Although this appears disingenuous, or at the very least a strained interpretation of the facts, Plaintiff effectively concedes that the instant action is unrelated to the 1993 District Court action, which makes Plaintiff's attempts to satisfy the jurisdictional requirements by relating back to the 1993 District Court action even more tenuous. Assuming Plaintiff is correct that the instant action is independent of all others and is based on the 2003 computational adjustments, Plaintiff has overtly failed to bring this action or otherwise file a claim within the time allowed by § 6230(c)(2)(A), which is six months from the time the IRS issues the adjustments.

did not file his claim pursuant to § 6230(c) within the requisite six months from the issuance of the computational adjustments on September 29, 2003, Plaintiff's claim is time-barred under the statute and, as such, barred by sovereign immunity as failing to satisfy the sovereign immunity waiver of 28 U.S.C. § 1346(a)(1) by way of 26 U.S.C. § 7422(h).

Finally, assuming arguendo that jurisdiction was proper and the merits of Plaintiff's § 6230(c) claim were reached beyond the scope of Defendant's motion to dismiss, a recent decision by the United States Tax Court would seemingly preclude Plaintiff's claims as a function of collateral estoppel. *Greer v. Commissioner*, T.C. Memo. 2007-119, 2007 WL 1373821 (U.S. Tax Ct., May 10, 2007). Although the Court does not make any substantive determinations at this preliminary juncture, a cursory overview of the Tax Court's memorandum decision reveals that Plaintiff's argument concerning an offset for the amount paid – $189,769 – to the IRS as a jurisdictional "deposit" to bring the 1993 District Court Action is counter-intuitive and not well received.[12]

---

[12] The Tax Court's ultimately concluded that the payment of tax by Plaintiff was merely a deposit effectuated for the purpose of bringing the refund claim within the 1993 District Court Action and, therefore, the return of money as ordered by the District Court did not constitute a refund that would warrant an offset of tax liability:

> It is clear from the record in the District Court that Mr. Greer's counsel sought the repayment. If this repayment was not the return of a deposit, then it was nevertheless not an erroneous refund as that term is described in cases such as *O'Bryant v. United States, supra.* The District Court ordered the repayment, and petitioners had not waived the restrictions on assessment which arose when the partnership action was filed in the Tax Court. The District Court specifically noted in the Order that the amount petitioners had paid was a prerequisite to filing the action in District Court. The District Court also ordered the repayment to include interest, thus putting petitioners in the position they were in before filing the amended returns and protective claims, which meant the petitioners remained liable for the entire potential deficiencies and penalties that could result from the Tax Court partnership case and this current matter.

*Greer*, T.C. Memo. 2007-119, 2007 WL 1373821, at *9.

**C.** **Notice of Federal Tax Lien – § 7433**

In addition to the computational adjustments themselves, Plaintiff also challenges the attendant Notice of Federal Tax Lien (NTFL) recorded by the IRS, asserting that the lien was issued erroneously because of issues with the underlying computational adjustments. Pursuant to 26 U.S.C. § 7433, which is the "exclusive remedy for recovering damages" for collection actions, Plaintiff contends that he has sustained compensable damages as a result of the "negligent filing of the erroneous Federal Tax Lien" by the IRS for tax deficiencies–totaling $698,252–associated with Plaintiff's partnership investment.[13] Defendant moves the Court to dismiss on grounds that the Court lacks subject matter jurisdiction because the gravamen of Plaintiff's claim is not collection but rather assessment, the claim is barred by the statute of limitations, and Plaintiff has failed to exhaust his administrative remedies.

Unlike many invocations of § 7433 throughout the case law attempting to challenge the assessment of taxes, Plaintiff's claim is viable insofar as it challenges the collection of the underlying tax liability via the NTFL recorded by the IRS. *See Williams v. United States*, 165 F.3d 29, 1998 U.S. App. LEXIS 18799, at *12 (6th Cir. 1998) (unreported) ("The scope of 7433 is limited to unauthorized collection actions and does not extend to

---

[13] Section 7433 provides in pertinent part:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions."

26 U.S.C. § 7433(a) (2007).

determinations of liability."). Even though Defendant is correct that the crux of Plaintiff's suit is the tax assessments, this has no bearing on the § 7433 claim because said claim applies only to the collection efforts of the IRS by way of the NTFL. Also, contrary to the contentions of Defendant, Plaintiff's claim pursuant to § 7433 is within the two-year statute of limitations as the action accrued at the recording of the NTFL, not at the issuance of the computational adjustments. 26 U.S.C. § 7433(d)(3) (2007).

However, it is well-settled that a "prerequisite for bringing such a claim...is exhaustion of administrative remedies." *Fishburn v. Brown*, 125 F.3d 979, 982 (6th Cir. 1987). The statute specifically mandates that "[a] judgment for damages shall not be awarded...unless the court determines that the plaintiff has exhausted the administrative remedies available to such a plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1). Plaintiff does not dispute that he is required to exhaust prior to bringing suit. Nevertheless, it is Plaintiff's contention that he has attempted to exhaust through various channels over the past decade, including writing various members of government, filing multiple law suits, and otherwise attempting to get his case heard by the IRS. Consequently, Plaintiff asserts, citing authority outside of the Circuit in support, that he is not required to exhaust administrative remedies with respect to the NTFL because any attempt would prove futile.

Although it is clear that this case has been litigated at every turn, Plaintiff's argument that filing a claim with the IRS in connection with the NTFL would be futile is unavailing and does not excuse Plaintiff from the exhaustion requirement in this case. The statute, § 7433(d)(1), specifically requires exhaustion and the case law supports enforcement of the exhaustion requirement. *See, e.g., Williams*, 1998 U.S. App. LEXIS, at *15 ("Plaintiffs do

not dispute that section 7433 requires that they exhaust their available administrative remedies, but argue that...doing so would prove futile. However, the district court correctly held that, under these circumstances, it lacked the authority to waive the exhaustion requirement of section 7433(d)(1)."). The regulations applicable to § 7433 are very clear and provide both the procedures for filing an administrative claim and the collateral aspects of doing so, such as the impact on the statute of limitations. *See* 26 C.F.R 301.7433-1 (2007).

"By regulation, no action can be filed in federal court [under § 7433] until a decision is rendered by the agency, six months have passed since the filing of the administrative claim, or the administrative claim has been filed and less than six months remain in the statute of limitations." *Romp v. United States*, 96 Fed. Appx. 978, 980 (6th Cir. 2004); 26 C.F.R. 301.7433-1(d). Because Plaintiff is still within the two-year statute of limitations for § 7433, Plaintiff will have the opportunity to re-file his action concerning the NTFL after filing an administrative claim with the IRS, if he so chooses. Although it is unclear what degree of success Plaintiff may experience given this Court's ruling with respect to the computational adjustments, the hardship of requiring Plaintiff to file an administrative claim before seeking the jurisdiction of the federal courts is minimal in relation to the need for courts to follow the unambiguous intent of Congress to require exhaustion in these matters. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Of 'paramount importance' to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required." (internal citations omitted)).

## IV.   CONCLUSION

In accordance with the foregoing analysis, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss (Doc. # 11) pursuant to FRCP 12(b)(1) and (6) be, and hereby is, **GRANTED**;

(2) Plaintiff's claim pursuant to 26 U.S.C. § 6230 be, and hereby is, **DISMISSED with prejudice**;

(3) Plaintiff's claim pursuant to 26 U.S.C. § 7433 be, and here is, **DISMISSED without prejudice**;

(4) All claims having been dismissed, Plaintiff's Complaint be, and hereby is, **STRICKEN** from the active docket of this Court;

(5) This is a **final** and **appealable** Order

This 23rd day of May, 2007.



Signed By:
David L. Bunning   DB
United States District Judge

G:\DATA\Opinions\2-06-181-Greer (MTD).wpd